REDMANN, Chief Judge,
dissenting.
The trial judge evidently understood the oral, open listing agreement between the parties as being no more than that “if you bring me a buyer I will pay you a commission.” (One may have such an agreement with several brokers at once.) Defendant owner himself was also advertising his boat for sale, and certainly there was no agreement that the owner would pay the broker a commission on any sale that the owner made.
An “open listing” at least excludes the closed-listing provision that entitles the broker to a commission no matter who sells the listed thing. Its other provisions are the burden of the professional broker to express and to prove. Former C.C. 1957 and 1958 (prior to the 1983 revision, of which see arts. 2056 and 2057), in force at the time of the open listing in question, in effect so provide:
“In a doubtful case the agreement is interpreted against him [who has stipulated and in favor of him who] has contracted the obligation.”
“But if the doubt or obscurity arise for the want of necessary explanation which one of the parties ought to have given, or from any other negligence or fault of his, the construction most favorable to the other party shall be adopted, whether he be obligor or obligee.”
The broker owes an explanation to the client of the terms of the oral, open contract, if it means any more than: “If you bring me an acceptable offer I’ll pay you a commission.” If the open-listing broker wants a contract for a commission on every sale the owner makes (excluding only sales made by other brokers), he ought to explain that to the owner and get his agreement to it. If the open-listing broker wants a commission for any sale to a person who has seen the open-listing broker’s advertisement or otherwise learned anything about the boat from the open-listing broker, directly or indirectly, the open-listing broker should explain that to the owner and get the owner’s consent to such a provision.
An owner who has open-listed a boat or other property at $49,000 is not obliged to pay the broker a commission upon refusing an offer of a lower price. Such an owner cannot, of course, reject an offer submitted by the broker for $43,000 because subject to commission and then attempt to sell to the same buyer at the same price without a commission. If the owner goes through such a sale to the buyer the broker presented and the owner rejected because of the commission, of course the broker is due a commission. But that is not our situation.
Our situation is that of the owner to whom the broker never submitted a $43,-000 offer. Our situation is that of the owner who has himself been advertising his boat directly, and to whom a buyer presents himself without informing the owner that a broker has sent him to see the boat.
Now the reasonably competent broker is not so dumb as not to know that an owner can get the same net amount out of a lower-priced sale without commission as from a higher-priced sale with commission: a broker is not so dumb as not to know that a $94,000 sale without commission produces $94,000 net to the owner, and it takes a $100,000 sale subject to 6% commission to produce the same $94,000 net to the owner.
And a buyer is not that dumb either. And the reasonably competent broker has to know that a buyer is not that dumb.
The consequence of a buyer’s not being that dumb is that a buyer would prefer, when possible, to buy directly from the owner, rather than through a broker, in order to buy at the lower, no-commission price. And the reasonably competent broker knows that, too.
*1174 The reasonably competent broker further knows that the owner also knows — to return to the dollar amounts of this case— that an owner who open-lists with 10% commission would net more from, say, a sale for $43,000 without commission than from a $47,000 sale with commission: to the owner who does not suspect that he may be liable for a commission, that $43,000 offer is more attractive than a $47,000 offer through the broker (which produces only $42,300 net). If someone who has not thought about it deems that anomalous or even unfair, the open-listing broker cannot so deem it because he or she well knows that that is the reality that he or she has chosen in order to have some chance at a commission (though far less a chance than the closed-listing broker has). The open-listing broker knows that that is his or her bargain.
Back, then, to C.C. 1958: If the open-listing broker wants to oblige the owner to determine, at the owner’s peril, whether any buyer who presents himself directly to the owner was somehow introduced to the boat or other property by the broker, the open-listing broker ought to give that necessary explanation, because the simple oral open-listing agreement does not do so. And, to repeat the words of art. 1958, “if the doubt or obscurity arise for the want of necessary explanation which one of the parties ought to have given, or from any other negligence or fault of his, the construction most favorable to the other party shall be adopted, whether he be obligor or obligee.”
The trial judge was correct, and far more brief, in his reasoning that the open-listing broker may indeed have contributed to the sale, but failed to protect himself for his commission. I would only add that he did not protect his client, the owner, for he did not even notify the owner that he would be sending the buyer over, much less (after showing the boat to the buyer and convincing the buyer to buy at or near the list price) himself present the buyer’s offer to the owner. The consequence was that the owner was lulled by the broker into believing that the buyer was one buying direct rather than through the broker, and therefore that the buyer’s $43,000 offer, because without commission, was the equivalent of a $47,777.78 offer, if subject to the broker’s 10% commission.
The broker by his silence and inaction caused the owner to accept a $43,000 offer in the belief that it was worth $43,000 net — the equivalent of a $47,777.78 offer by the broker. The owner cannot fairly be made to accept, instead, an offer that turns out to be for only $38,700 net. The broker is not entitled to a commission under the circumstances, through his own fault. The judgment appealed from should be affirmed.